1

2

3

4

5

6

7                   IN THE UNITED STATES DISTRICT COURT

8                      FOR THE DISTRICT OF OREGON

9

10   MICHAEL JAMES,                    )
                                       )      No.  CV 07-1640-HU
11                 Plaintiff,          )
                                       )
12        v.                           )      FINDINGS AND
                                       )
13   EVERGREEN INTERNATIONAL           )      RECOMMENDATION
     AIRLINES, INC.,                   )
14                                     )
                   Defendant.          )
15   _____)

16

17   Scott N. Hunt
     R. Kyle Busse
     Busse & Hunt
18   521 American Bank Building
     621 S.W. Morrison Street
19   Portland, Oregon 97205
          Attorneys for plaintiff
20

21   Jennifer L. Bouman
     Bullard Smith Jernstedt Wilson
     1000 S.W. Broadway
22   Portland, Oregon 97205

23   Douglas W. Hall
     Alison N. Davis
24   1300 Nineteenth Street, N.W., Suite 700
     Washington, D.C. 30036
25        Attorneys for defendant

26

     ///
27

28   Findings and Recommendation Page 1

HUBEL, Magistrate Judge:

This is a diversity action for wrongful discharge and wage claim discrimination/retaliation under Or. Rev. Stat. § 652.355, brought by plaintiff Michael James against his former employer, Evergreen International Airlines, Inc. (Evergreen).[1] James seeks economic, emotional distress, and punitive damages.

The complaint alleges that James was employed as a First Officer, flying airplanes as assigned anywhere in the world, from April 16, 2006, until his termination just under 10 months later, on or about February 5, 2007. Although the complaint alleges that James was "dispatched from Defendant's offices in Oregon," Complaint ¶ 6, Evergreen has proffered the Declaration of Gwenna Wootress, Vice President, Legal Counsel and Corporate Secretary of Evergreen, stating that James was a resident of Kentucky assigned to a crew base at John F. Kennedy International Airport in New York City, New York. Wootress Declaration ¶ 4. A crew base is an airport location where a crewmember begins and ends a trip. Id.

James was subject to a collective bargaining agreement (CBA) negotiated by the Air Line Pilots Association (ALPA). Wootress Declaration ¶ 5 & Exhibit A. The CBA provides that crewmembers are on probation during their first 12 months of active service, and that probationary crewmembers may be disciplined or discharged at the sole discretion of Evergreen, with or without just cause, "without recourse to the Review Board, the grievance procedure or

---

[1] James has dismissed with prejudice a third claim, asserted pursuant to Or. Rev. Stat. § 652.150.

Findings and Recommendation Page 2

1  the System Board of Adjustment." Wootress Declaration Exhibit A,

2  sections 11J and 21; ¶ 11.

3       According to Wootress, for matters other than termination, if

4  a crewmember disagrees with Evergreen's application or

5  interpretation of any provision of the CBA, including scheduling or

6  overtime, he or she can file a grievance, even during the

7  crewmember's probationary period. Wootress Declaration at ¶ 12,

8  citing CBA, section 19A, p. 52. Section 19A of the CBA provides as

9  follows:

> A grievance under this section is defined as any dispute
> between The Company and a crewmember or group of
> crewmembers or TAG[2] arising out of the interpretation or
> the application of an express provision of this
> Agreement. Grievances will not include proposed changes
> in hours of employment, rates of compensation or working
> conditions. Grievances must be filed in writing and
> contain reference to the provision(s) of the Agreement
> alleged to have been violated and a statement of the
> facts involved sufficiently detailed to allow
> investigation of the incident.

16  Ms. Wootress's statement does not accurately reflect the provisions

17  of the CBA. Section 19A of the CBA does not explicitly say that

18  probationary employees can or cannot invoke the grievance

19  procedure. Further, Section 19A of the CBA states that grievances

20  do not include "proposed changes in hours of employment" or

21  "working conditions." Sections 11J and 21 of the CBA, as discussed

22  above, deny probationary employees recourse to the grievance

23  procedure with respect to discipline or discharge.

24  ///

25

26  _____

27       [2] The CBA defines TAG as The Aviators Group, the elected
    crewmember representation. CBA, section 2, page 8.

28  Findings and Recommendation Page 3

James alleges that during his employment, he exercised employment-related rights by 1) reporting to Evergreen that he was not sufficiently rested to fly certain flights, Complaint ¶ 7; 2) reporting "potential FAA violations" by Evergreen to ALPA, which the union reported to the FAA, id. at ¶ 8; and 3) complaining about Evergreen's failure to pay him overtime. Id. at ¶ 9. James alleges that his complaints were a substantial factor in Evergreen's termination of his employment. Id. at ¶ 10. On the basis of these allegations, James asserts a claim for wrongful discharge and wage claim discrimination/retaliation in violation of Or. Rev. Stat. § 652.355.

Prior to his termination, James did not invoke the grievance process under the CBA to challenge any of Evergreen's actions or its interpretations of the CBA. James was terminated while he was still a probationary pilot. Id. at ¶ 5.

**Standard**

A motion under Rule 12(b)(6) should not be granted if an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1969 (2007). For purposes of a 12(b)(6) motion, all material facts as pleaded in the complaint are assumed to be true. Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991).

**Discussion**

In its motion to dismiss, Evergreen asserts that James's wrongful discharge claim is preempted by the Railway Labor Act, 45

Findings and Recommendation Page 4

1  U.S.C. § 151 et seq.,(RLA). Evergreen asserts that even if the
2  wrongful discharge claim were not preempted by the RLA, to the
3  extent the claim is "based on Plaintiff's allegation that he was
4  terminated for asserting and reporting alleged violations of
5  federal aviation regulations," the claim was preempted by the
6  Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b). Lastly,
7  Evergreen asserts that even if the wrongful discharge claim were
8  not preempted, it would be precluded because James has an adequate
9  alternate statutory remedy.

10      1.  RLA preemption

11      The RLA preempts state common law causes of action which
12  require the interpretation of a CBA. See, e.g., Hawaiian Airlines
13  v. Norris, 512 U.S. 246, 261 (1994)("Where the resolution of a
14  state law claim depends on an interpretation of the collective
15  bargaining agreement, the claim is preempted [by the RLA]." See
16  also Edelman v. Western Airlines, Inc., 892 F.2d 839, 843-44 (9th
17  Cir. 1989)(claims that are "inextricably intertwined with the
18  grievance machinery of the collective bargaining agreement" are
19  preempted by the RLA). The CBA in this case explicitly precludes
20  probationary employees from recourse to the grievance machinery
21  with respect to matters of discipline or discharge. For that
22  reason, I am unpersuaded by Evergreen's argument that James's
23  wrongful discharge claims are preempted by the RLA.  Grievances
24  also "will not include proposed changes in hours of employment . .
25  . or working conditions." Section 19A of CBA.  This may also
26  preclude RLA preemption.

27

28  Findings and Recommendation Page 5

1        2.   <u>ADA preemption</u>

2        The ADA prohibits state regulation of the airline industry,

3   providing that no state may enact or enforce any law, regulation,

4   or provision related to a price, route, or service of an air

5   carrier. 49 U.S.C. § 41713(b). In <u>Charas v. Trans World Airlines,</u>

6   <u>Inc.</u>, 160 F.3d 1259, 1265-66 (9th Cir. 1998), the court held that

7   "service," which is perhaps the broadest provision of the statute,

8   encompasses "such things as the frequency and scheduling of

9   transportation and ... the selection of markets to or from which

10  transportation is provided..." In <u>Duncan v. Northwest Airlines,</u>

11  <u>Inc.</u>, 208 F.3d 1112, 1114 n. 8 (9th Cir. 2000), the court emphasized

12  that the ADA preempts "only state laws and lawsuits that would

13  adversely affect the economic deregulation of the airlines and the

14  forces of competition in the airline industry," citing <u>Charas</u> 160

15  F.3d at 1261. The court held that determining whether a claim was

16  preempted by the ADA required an inquiry into whether that claim

17  would have an effect on aspects of the airline's business, such as

18  pricing, routes and services. <u>Id.</u> Consequently, claims based on

19  state law will be preempted by the ADA if the state law has a

20  "forbidden significant effect" on airline prices, routes or

21  services. <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 388

22  (1992).

23       The Ninth Circuit has not ruled on the issue of whether a

24  wrongful discharge claim based on allegations that the airline

25  retaliated against a whistleblower falls within the ADA's §

26  4173(b). Sister circuits have split on the issue. See, e.g., <u>Botz</u>

27

28  Findings and Recommendation Page 6

1  v. Omni Air Int'l, 286 F.3d 488 (8th Cir. 2002)(holding that state
2  law authorizing an employee to refuse an assignment that employee
3  believed violated federal aviation regulations could have a direct
4  and adverse effect on the airline's ability to provide scheduled
5  services and was therefore preempted) and Branche v. Airtran
6  Airways, Inc., 342 F.3d 1248 (11th Cir. 2003)(holding that claim
7  based on Florida whistleblower statute not preempted because
8  retaliation claims do not affect or implicate a service for which
9  airlines compete for business).

10     In Fadaie v. Alaska Airlines, Inc., 293 F. Supp.2d 1210, 1215
11  (W.D. Wash. 2003), the court, relying on the Ninth Circuit's more
12  narrow definition of "services," as used in § 41713(b)(1), than
13  that of either the Eighth or the Eleventh Circuit, held that the
14  Ninth Circuit

15         would likely conclude that an employee's whistleblower
16         claim is not preempted because such claims have very
           little, if anything, to do with the "frequency and
17         scheduling of transportation [or] the selection of
           markets to or from which transportation is provided,"
18         Charas, 160 F.3d at 1255-66.

19  293 F. Supp.2d at 1216. The court reasoned that a claim based on
20  retaliation that occurred after, and was logically separate from,
21  on-the-job conduct by the employee that could cause an operational
22  delay, did not affect prices, routes or services and therefore did
23  not trigger preemption under § 41713.

24     James's wrongful discharge claim in this case is also based on
25  retaliation that occurred after James's complaints about being
26  tired and about potential FAA violations, and I find the Fadaie
27  court's reasoning persuasive.

28  Findings and Recommendation Page 7

A 1999 amendment of the ADA added a federal Whistleblower Protection Program to the ADA, 49 U.S.C. § 42121 (WPP). WPP prohibits an air carrier from discharging or otherwise discriminating against an employee because the employee, or any person acting pursuant to a request of the employee,

> (1) provided, caused to be provided, or is about to provide (with any knowledge of the employer) or cause to be provided to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States;

> (2) has filed, caused to be filed, or is about to file (with any knowledge of the employer) or cause to be filed a proceeding relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States;

> * * *

49 U.S.C. § 42121(a)(1), (2). The WPP requires the person with the grievance to file a complaint with the Department of Labor not later than 90 days after the date on which the violation occurs. 49 U.S.C. § 42121(b)(1). After affording the entity named in the complaint an opportunity to respond and meet with a representative of the Secretary of Labor, the Secretary is authorized to conduct an investigation and enter an order. After a hearing, if requested, the Secretary issues a final order and, if a violation is found, the Secretary may take action to abate the violation; reinstate the complainant, together with compensation; provide compensatory damages; and award attorney's fees, costs and expenses. The Secretary's order is reviewable in a United States Court of

Findings and Recommendation Page 8

1  Appeals.

2      Evergreen argues that this amendment preempts state law claims
3  based on retaliation for raising safety concerns. However, as the
4  Fadaie court noted, filing a complaint under the WPP is not
5  mandatory, as evidenced by 49 U.S.C. § 42121(b)(1)'s provision that
6  a person who believes he has been discharged or otherwise
7  discriminated against may file a complaint with the Secretary of
8  Labor. The court noted that there is no reference to preemption in
9  the WPP and "no indication that the WPP changed the scope of §
10  41713;" it simply provided an "additional remedy for plaintiffs
11  seeking to advance a retaliatory discharge claim." 293 F. Supp.2d
12  at 1217, quoting Branche, 342 F.3d at 1264. The Fadaie court noted
13  that its conclusion that the retaliatory discharge claim was not
14  related to price, routes or service was "unaffected by the
15  existence of the WPP." Id. I agree with the Fadaie court and
16  conclude that the wrongful discharge claim is not preempted by the
17  ADA.

18      3.   Adequate alternate remedy

19      In Oregon, the tort of wrongful discharge is designed to
20  "serve as a narrow exception to the at-will employment doctrine in
21  certain limited circumstances where the courts have determined that
22  the reasons for the discharge are so contrary to public policy that
23  a remedy is necessary in order to deter such conduct." Draper v.
24  Astoria Sch. Dist. No. IC, 995 F. Supp. 1122, 1127 (D. Or. 1998),
25  abrogated in part on other grounds, Rabkin v. Oregon Health
26  Sciences Univ., 350 F.3d 967 (9th Cir. 2003). The tort "never was

27

28  Findings and Recommendation Page 9

1   intended to be a tort of general application but rather an

2   interstitial tort to provide a remedy when the conduct in question

3   was unacceptable and no other remedy was available." Id. at 1128.

4        In Draper, the court concluded that until the Oregon Supreme

5   Court clarifies the governing standards,

6        a claim for common law wrongful discharge is not
         available in Oregon if 1) an existing remedy adequately
7        protects the public interest in question, or 2) the
         legislature has intentionally abrogated the common law
8        remedies by establishing an exclusive remedy (regardless
         of whether the courts perceive that remedy to be
9        adequate).

10  Id. at 1130-31. The District of Oregon follows this analysis. See,

11  e.g., Henry v. Portland Dev. Comm'n, CV 06-712-HU, 2006 WL 4008709

12  at *3-5 (D. Or. Oct. 18, 2007); Gahano v. Sundial Marine & Paper,

13  CV 05-1946-BR, 2007 WL 4462423 at *12-15 (D. Or. December 14,

14  2007); Bates v. Lucht's Concrete Pumping, Inc., CV 05-796-PK (D.

15  Or. Feb. 26, 2007); Navarette v. Nike, Inc., CV 05-1827, 2007 WL

16  221865 at *2 (D. Or. Jan. 26, 2007); Wilson v. Southern Or. Univ.,

17  No. CV 06-3016-CO, Findings and Recommendation at p. 5 (D. Or. Aug.

18  24, 2006); Allen v. Oregon Health Sciences Univ., No. CV 06-285-BR,

19  2006 WL 2252577 at *2 (D. Or. Aug. 4, 2006); Halbasch v. Med-Data,

20  Inc., No. CV 98-882-HU, 1999 WL 1080702, at *2 (D. Or. Aug. 4,

21  1999).

22       James argues that the test used in Draper to determine whether

23  an alternate remedy exists requires a showing that an alternate

24  adequate remedy exists and that the legislature intended the remedy

25  to supersede common law remedies. James is incorrect. The test is

26  a disjunctive one, in which a wrongful discharge claim is precluded

27

28  Findings and Recommendation Page 10

1  if the alternate remedy is adequate or if the legislature intended

2  the remedy to supersede common law remedies. See <u>Henry</u>, 2006 WL

3  4008709 at *5.

4        Evergreen contends that James has an adequate alternate

5  remedy to his wrongful discharge claim based on complaints about

6  Evergreen's failure to pay him overtime in Or. Rev. Stat. §

7  652.355. The definitions section for that provision, which applies

8  to Or. Rev. Stat. §§ 652.310 to 652.414, defines "employee" as

9        any individual who otherwise than as a copartner of the
         employer, as an independent contractor renders personal
10       services <u>wholly or partly in this state to an employer</u>
         who pays or agrees to pay such individual at a fixed
11       rate, based on the time spent in the performance of such
         services or on the number of operations accomplished, or
12       quantity produced or handled. However,
                              * * *
13       (b) Where services are rendered only partly in
         this state, an individual shall not be an
14       employee under this section unless the
         contract of employment of the employee has
15       been entered into, or payments thereunder are
         ordinarily made or to be made, within this
16       state.

17  Or. Rev. Stat. § 652.310(2)(emphasis added). James has not alleged

18  that the services he rendered to Evergreen were wholly or partly in

19  this state, and does not dispute Evergreen's assertion that his

20  services were rendered primarily in New York state. Nevertheless,

21  Evergreen has not moved against James's § 652.355 claim on the

22  ground that James is precluded from asserting such a claim because

23  he did not render his services wholly or partly in this state.[3]

24

25       [3] Evergreen asks in its Memorandum that the court "dismiss
    all of the causes of action which Plaintiff asserts in his
26  Complaint with prejudice." Memorandum, p. 16. But Evergreen also
    relies on James's claim under Or. Rev. Stat. § 652.355 for the
27  argument that he has an adequate alternate remedy to the wrongful

28  Findings and Recommendation Page 11

Instead, Evergreen argues that the existence of this remedy precludes James from asserting the claim for wrongful discharge.

Section 652.355 provides as follows:

**Prohibition of discrimination because of wage claim; remedy.** (1) No employer shall discharge or in any other manner discriminate against any employee because:
>    (a) The employee has made a wage claim or discussed, inquired about or consulted an attorney or agency about a wage claim.
>    (b) The employee has caused to be instituted any proceedings under or related to ORS 652.310 to 652.414.
>    (c) The employee has testified or is about to testify in any such proceedings.

(2) Any person who discharges or discriminates against an employee in violation of subsection (1) of this section shall be liable to the employee discharged or discriminated against for actual damages or $200, whichever is greater. In any action under this subsection, the court may award to the prevailing party, in addition to costs and disbursements, reasonable attorney fees.

In <u>Paugh v. King Henry's, Inc.</u>, CV 04-763-ST, 2005 WL 1565112

---

discharge claim under that statute. See Memorandum, p. 14 ("[T]o the extent Plaintiff claims he was terminated for objecting to an alleged failure to comply with state wage and hour laws, he would have an adequate remedy under ORS 652.355--a claim he has already raised in his complaint.") Evergreen moved to dismiss James's claim under Or. Rev. Stat. § 652.150 on the ground that James did not perform services in Oregon, and James has conceded the argument and withdrawn the claim. But Evergreen did not move against James's claim under Or. Rev. Stat. § 652.355 on the same grounds, even though the definitions section for that provision defines "employee" as
> any individual who otherwise than as a copartner of the employer, or as an independent contractor renders personal services wholly or partly in this state to an employer..." Or. Rev. Stat. § 652.310(2).

In its Memorandum, Evergreen argues only that "Oregon law does not apply to Plaintiff's statutory wage claim because Plaintiff worked primarily in New York State." Defendant's Memorandum, p. 2. Evergreen has not argued that James's claim under § 652.355 should be dismissed on the same basis--that James worked primarily in New York State.

Findings and Recommendation Page 12

at *5-7 (D. Or. June 30, 2005), the court held that the remedies available under 652.355 are "adequate to compensate for the personal nature of the injury done to a wrongfully discharged employee for reporting and resisting a wage and hour law violation." I conclude therefore that James's wrongful discharge claim is precluded by the existence of an adequate statutory remedy in Or. Rev. Stat. § 652.355.

Evergreen contends that the WPP provides James with an adequate statutory remedy precluding a wrongful discharge claim based on reporting the potential FAA violations. James argues that the remedies provided by the WPP are not adequate because the WPP does not provide for the recovery of punitive damages, citing Cantley v. DSMF, 422 F. Supp.2d 1214 (D. Or. 2006)(statute not providing for compensatory or punitive damages not an adequate alternate remedy to wrongful discharge claim).

Evergreen counters with the court's ruling in Paugh that an existing remedy is adequate where it provides for recovery of attorney's fees but not punitive damages. See also Bates v. Lucht's Concrete Pumping, Inc., 2007 WL 656428 (D. Or. Feb. 26, 2007)(finding Paugh persuasive and agreeing that the availability of attorney fees offsets the lack of punitive damages).

Based on Paugh and Bates, I conclude that the WPP's provision for compensatory damages and attorney's fees and costs offsets the lack of a provision for punitive damages and makes the WPP's remedies adequate for purposes of the Draper analysis.

/ / /

Findings and Recommendation Page 13

**Conclusion**

I recommend that Evergreen's motion to dismiss be GRANTED with respect to the wrongful discharge claim. Plaintiff has represented to the court that he concedes his claim under Or. Rev. Stat. § 652.150 should be dismissed with prejudice; accordingly Evergreen's motion to dismiss should be GRANTED with respect to the claim under Or. Rev. Stat. § 652.150. Because Evergreen has not moved to dismiss James's claim under Or. Rev. Stat. § 652.355, that claim remains in the case. While the court is aware that this result is strange to say the least, the court is constrained to reach this recommendation based on the way the case has been pleaded and the motions briefed and argued.

**Scheduling Order**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due April 18, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due May 2, 2008, and the court's review of the Findings and Recommendation will go under advisement with the District Judge on that date.

Dated this 3rd___ day of April_____, 2008.


                              _/s/ Dennis James Hubel_____

                              Dennis James Hubel
                              United States Magistrate Judge


Findings and Recommendation Page 14